1  Squire Patton Boggs (US) LLP
   Helen H. Yang (State Bar # 241170)
2  helen.yang@squirepb.com
   Marisol C. Mork (State Bar # 265170)
3  marisol.mork@squirepb.com
   555 South Flower Street, 31st Floor
4  Los Angeles, California 90071
   Telephone: +1 213 624 2500
5  Facsimile: +1 213 623 4581

6  Attorneys for Plaintiff
   SALCOMP PLC
7

8                 UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11 | SALCOMP PLC,                          | Case No. 2:17-cv-07807

12 |         Plaintiff,                    | **COMPLAINT FOR:**

13 |     v.                                | **(1) BREACH OF CONTRACT**

14 | Foreign Trade Corporation, d/b/a      | **(2) PROMISSORY ESTOPPEL**
   | Technocel, and DOES 1 through 10,
15 | inclusive,                            | **(3) UNJUST ENRICHMENT**

16 |         Defendants.                   | **(4) FRAUDULENT MISREPRESENTATION/ INDUCEMENT**
17
18 |                                       | **(5) NEGLIGENT MISREPRESENTATION**

Plaintiff Salcomp PLC ("Salcomp"), a Finnish corporation, for its Complaint against Foreign Trade Corporation d/b/a Technocel ("Technocel"), hereby alleges as follows:

## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as there is diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2. Venue is proper under 28 U.S.C. § 1391(b), as Technocel resides in this judicial District.

## PARTIES

3. Salcomp is a Finnish corporation with its principal place of business in Salo, Finland. Salcomp is a leading manufacturer of mobile phone and electronic device adapters and is the market leader in smartphone and tablet chargers, providing innovative and high quality power supplies, battery backs, and lighting solutions. In addition to its headquarters in Salo, Finland, Salcomp maintains offices in the United States, Brazil, Taiwan, South Korea, Hong Kong, and Japan.

4. Technocel is a d/b/a of Foreign Trade Corporation, a California corporation with its principle place of business in Simi Valley, California that also has offices in San Fernando, California. Technocel is an international distributor of wireless accessories. Technocel is a global distributor of over 3,000 product accessories, representing brands in over 70 countries.

5. Salcomp does not know the true names and capacities of the defendants sued as DOES 1 through 10, inclusive, and, therefore, sues these defendants by such fictitious names. Salcomp will amend this Complaint to allege the true names and capacities of DOES 1 through 10, inclusive, when ascertained.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

6. In the business relationship between Salcomp and Technocel, Technocel established a course of dealing and/or performance by which it would routinely order

various charger products from Salcomp by issuing purchase orders to Salcomp. Upon receipt of Technocel's purchase orders, Salcomp would manufacture and cause the goods that had been requested by Technocel to be delivered pursuant to the terms specified in Technocel's purchase orders. At or about the time of delivery, Salcomp would issue an invoice, itemizing the goods that were to be delivered to Technocel's offices in San Fernando, California. Payment from Technocel was due forty-five (45) days after delivery, as explicitly set forth in Technocel's purchase orders. Technocel was also responsible for promptly paying amounts due to Salcomp under Salcomp's invoices.

7. The contracts between the parties ("Contracts") include Technocel's purchase orders for Verizon branded chargers, described as "VERIZON 4-COIL QI CHARGER [¶] INCLUDES 45W PD AC CHARGER WITH 6FT CABLE AND USB-C CONNECTOR [¶] VERIZON BRANDED AND PACKAGED [¶] RUBBER FEET [¶] SILICONE TOP SURFACE" (hereafter referred to as the "Chargers"), Salcomp's invoices, and the course of dealing of the parties.

8. On or about July 13, 2016, Technocel issued Purchase Order No. 0026824, wherein it placed an order for 55,000 units of Chargers. The agreed upon price per unit ("PPU") for this order was US$30.87, for a total of $1,697,850.

9. On or about August 24, 2016, Technocel issued Purchase Order No. 0026989, wherein it placed an additional order for 20,000 units of Chargers, with 10,000 units at a PPU of US$30.87 and 10,000 units at a PPU of US$30.85, for a total of $617,200.

10. On or about August 24, 2016, Technocel issued Purchase Order No. 0026990, wherein it placed an additional order for 60,000 units of Chargers at a PPU of US$30.85, for a total of $1,851,000.

11. Pursuant to Technocel's Purchase Order Nos. 0026824, 0026989 and 0026990, Salcomp agreed to manufacture and sell 135,000 units of Chargers in return for $4,166,050.

12. From approximately March 17, 2017 through June 1, 2017, Salcomp delivered 95,860 Chargers to Technocel, at an aggregate agreed upon price of $2,958,581.00. The following sets forth all Chargers shipped to Technocel pursuant to the Contracts, and the corresponding payment due date consistent with the agreed 45-day term:

| Billing Document | Document Date | Net due date | Amount due | Document currency |
|---|---|---|---|---|
| 90274812 | 3/17/2017 | 5/1/2017 | 18,522.00 | USD |
| 90275007 | 3/21/2017 | 5/5/2017 | 92,610.00 | USD |
| 90275137 | 3/23/2017 | 5/7/2017 | 74,088.00 | USD |
| 90275209 | 3/24/2017 | 5/8/2017 | 37,044.00 | USD |
| 90275330 | 3/25/2017 | 5/9/2017 | 86,436.00 | USD |
| 90275335 | 3/27/2017 | 5/11/2017 | 37,044.00 | USD |
| 90275413 | 3/28/2017 | 5/12/2017 | 46,305.00 | USD |
| 90275476 | 3/29/2017 | 5/13/2017 | 46,305.00 | USD |
| 90275595 | 3/30/2017 | 5/14/2017 | 55,566.00 | USD |
| 90275673 | 3/31/2017 | 5/15/2017 | 55,566.00 | USD |
| 90275796 | 4/1/2017 | 5/16/2017 | 74,088.00 | USD |
| 90275831 | 4/5/2017 | 5/20/2017 | 55,566.00 | USD |
| 90275928 | 4/6/2017 | 5/21/2017 | 169,785.00 | USD |
| 90275929 | 4/6/2017 | 5/21/2017 | 18,522.00 | USD |
| 90276006 | 4/7/2017 | 5/22/2017 | 37,044.00 | USD |
| 90276212 | 4/11/2017 | 5/26/2017 | 92,610.00 | USD |
| 90276252 | 4/12/2017 | 5/27/2017 | 74,088.00 | USD |
| 90276312 | 4/13/2017 | 5/28/2017 | 52,479.00 | USD |
| 90276559 | 4/14/2017 | 5/29/2017 | 55,566.00 | USD |
| 90276567 | 4/15/2017 | 5/30/2017 | 55,566.00 | USD |
| 90276582 | 4/17/2017 | 6/1/2017 | 46,305.00 | USD |
| 90276595 | 4/18/2017 | 6/2/2017 | 74,088.00 | USD |
| 90277100 | 4/26/2017 | 6/10/2017 | 342,657.00 | USD |
| 90277101 | 4/26/2017 | 6/10/2017 | 27,783.00 | USD |
| 90277580 | 5/4/2017 | 6/18/2017 | 185,220.00 | USD |
| 90277581 | 5/4/2017 | 6/18/2017 | 185,162.00 | USD |
| 90277786 | 5/8/2017 | 6/22/2017 | 177,696.00 | USD |
| 90278546 | 5/22/2017 | 7/6/2017 | 41,339.00 | USD |
| 90278547 | 5/22/2017 | 7/6/2017 | 328,861.00 | USD |
| 90279181 | 6/1/2017 | 7/16/2017 | 314,670.00 | USD |
| **TOTAL** | | | **2,958,581.00** | **USD** |

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

13. Salcomp performed under the Contracts, and produced and shipped the Chargers that Technocel ordered. Technocel never cancelled its orders for the Chargers, and never refused to accept any shipments of the Chargers.

14. By May 8, 2017, $222,264 was due and owing but Salcomp had not received any payment for its Chargers shipped to Technocel. Following Salcomp's request for payment of overdue invoices, Technocel advised that payment for Invoice No. 90274812, in the amount of $18,522.00 for approximately 600 units of Chargers, had been sent. Technocel did not, and has not since, made any further payments for the remaining $2,940,059 in invoices.

15. In mid-May 2017, Salcomp made repeated requests to Technocel for payment of overdue invoices. Technocel maintained that it was working on a payment plan, and that Salcomp would be contacted by Technocel's accounting department. Salcomp reasonably relied on these representations in continuing to manufacture and ship the Chargers to Technocel.

16. On May 24, 2017, Technocel advised Salcomp that it had met with Verizon regarding sales of the Chargers, that Verizon's sales were not doing well, but that Technocel was making many efforts to increase sales. In that same correspondence, Technocel requested Salcomp continue shipping Chargers until approximately 96,000 units were shipped, and to put the remainder of the approximately 39,000 units on hold. By this time, Technocel was already in arrears for $885,969.00. So as not to breach its contractual duties, and in reliance on Technocel's actions and representations, Salcomp continued to manufacture and ship the Chargers to Technocel.

17. On or about June 6, 2017, Technocel sent an email to Salcomp to confirm that Salcomp had placed all future shipments of the Chargers on hold. Salcomp advised that shipments were on hold, and again inquired as to the status of Technocel's overdue invoices. Technocel's only response was that their accounting department was still making plans.

18. By June 13, 2017, Salcomp still had not received any payments or further correspondence regarding a payment plan. On or about June 29, 2017, Salcomp advised Technocel that Salcomp would send Technocel's invoices to a collection agency unless a satisfactory payment plan was received by July 31, 2017. By that time, Technocel had materially breached its agreement with Salcomp to provide payment within 45 days of the Charger shipments. Technocel has enriched itself by ordering, accepting, and maintaining possession of approximately 95,000 Chargers without paying for them.

19. July 31, 2017 came and went without receipt of outstanding payment from Technocel. Accordingly, on August 1, 2017, Salcomp sent Technocel a final demand letter for payment and enclosed a draft Complaint that would be filed if Technocel refused payment. In response, the parties explored an amicable resolution of the dispute. Thereafter, Salcomp flew its Vice-President, Head of Sales and Marketing, from Salo, Finland to meet in person with Technocel's Chief Financial Officer and Chief Executive Officer on September 6, 2017. The parties first met in person at Technocel's offices in Simi Valley, California. That meeting was seemingly productive.

20. Salcomp continued good faith discussions with Technocel. These discussions were sufficiently encouraging to Salcomp that it again flew its Vice-President of Sales and Marketing from Hong Kong to Los Angeles to meet with Technocel's executives on October 2, 2017.

21. This meeting was a sham. Despite confirmation that the meeting would take place, no one from Technocel was at the offices to meet with Salcomp. No one from Technocel even bothered to contact Salcomp's Vice-President following the sham meeting. Salcomp is informed and believe and therefore alleges that Technocel never intended to negotiate in good faith.

22. In light of Salcomp's inability to resolve Technocel's breach of contract on an amicable basis despite its best efforts, and Technocel's conduct in stringing out out settlement discussions for the sole apparent reason of inducing Salcomp not to act on its rights, Salcomp is compelled to pursue this action.

## COUNT I

### (Breach of Contract)

23. Salcomp hereby realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 22 above.

24. On July 13, 2016 and August 24, 2016, Technocel issued a total of three purchase orders to Salcomp, which were accepted and fulfilled by Salcomp, and invoiced accordingly. This resulted in valid and enforceable Contracts between the parties, for good and valuable consideration.

25. Salcomp performed all of its obligations under the Contracts, except those conditions, covenants and obligations excused by Technocel's breach.

26. Technocel materially breached its obligations under the Contracts by failing to pay Salcomp for the Chargers it received and accepted.

27. As a direct and proximate result of Technocel's breach, Salcomp has been damaged and continues to suffer damages.

28. There is due and owing from Technocel to Salcomp the principle sum of not less than $4,147,528, representing the contract price of the Chargers Technocel ordered, all of which is currently overdue. Salcomp is entitled to interest on the foregoing amount and to such additional sums as Salcomp may be required to incur as a proximate cause of Technocel's breach.

## COUNT II

### (Promissory Estoppel)

29. Salcomp hereby realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 28 above.

30. Technocel ordered 135,000 Chargers from Salcomp.

31. Technocel represented that if Salcomp shipped the Chargers requested, Technocel would render payment for such goods within 45 days. Technocel further represented that it was working on a payment plan for past due invoices on shipments already made.

32. In so representing, Technocel knew or should have known that Salcomp would be reasonably induced to rely upon those representations and expend significant time and resources to deliver the goods to Technocel.

33. Salcomp did rely on the above representations, to its detriment, and manufactured and shipped 95,860 Chargers to Technocel.

34. Having received and accepted the goods, Technocel failed to pay for them.

35. Salcomp further manufactured additional chargers in anticipation of the remaining 39,140 Chargers that Technocel ordered.

36. As a direct and proximate result of Technocel's conduct, Salcomp has, and will, suffer damages in an amount to be proven at trial.

37. Injustice can be avoided only by enforcing Technocel's promise to pay for all of the Chargers shipped to, and accepted by, Technocel, and enforcing Technocel's promise to purchase the remaining 39,140 Chargers at the agreed upon price of $30.85 per unit.

## COUNT III

### (Unjust Enrichment)

38. Salcomp hereby realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 37 above.

39. At Technocel's request, Salcomp manufactured and delivered 95,860 Chargers to Technocel, which Technocel accepted, and further manufactured additional chargers to fulfill Technocel's additional orders.

40. Subsequently, Technocel resold some or all of the Chargers to its own customers, and received payment from those customers.

41. Technocel has not paid Salcomp for the Chargers it has manufactured, including those already shipped to and received by Technocel, despite repeated requests for payment and efforts to establish a payment plan.

42. Technocel has been unjustly enriched by Salcomp's manufacture of the Chargers, for which Technocel did not pay.

43. As a direct and proximate cause of Technocel's conduct, Technocel has been unjustly enriched and Salcomp harmed in an amount to be proven at trial.

## COUNT IV

### (Fraudulent Misrepresentation & Inducement)

44. Salcomp hereby realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 43 above.

45. As described herein, Technocel ordered 135,000 units of the Chargers from Salcomp, and agreed to pay for them at a cost of $30.85 to $30.87.

46. Technocel made false representations of material fact and/or concealed material facts in connection with the order and acceptance of the Chargers, including, among others:

- Misrepresenting that Technocel would pay for the Chargers within 45 days of delivery when it had no intent to do so;
- Requesting that Salcomp continue shipping product up to approximately 96,000 units of the Chargers, while suppressing the fact that Technocel had no intention of paying for them;
- Misrepresenting that Technocel's accounting department was working on a payment plan to pay for the Chargers when it in fact was not doing so;
- Misrepresenting that Technocel was interested in settlement discussions; and
- Concealing that purported negotiations were in fact intentional attempts to delay Salcomp's efforts to recover for the Chargers.

47. On information and belief, Technocel knew these misrepresentations, omissions, and concealment of material facts were false, or at a minimum, acted recklessly as to the truth or falsity of the representations.

48. On information and belief, Technocel intentionally or recklessly made the misrepresentations, omissions, and concealment for the purpose of inducing Salcomp to continue manufacturing and shipping Chargers to Technocel, and to purposefully delay making payments to Salcomp.

49. On information and belief, Technocel intended for Salcomp to rely on the misrepresentations, omissions, and concealment.

50. Salcomp reasonably and justifiably relied to its detriment on the misrepresentations, omissions, and concealment of Technocel.

51. As a direct and proximate result of the fraudulent inducement and misrepresentations, omissions, and concealment described herein, Salcomp has suffered, and will continue to suffer, irreparable harm and injury including, but not limited to, substantial losses in revenue, loss of profits, discredit to its business reputation and loss of goodwill, loss of business relations with existing and future business prospects and loss of competitive business advantage, opportunity and/or expectancy.

52. In the alternative, and/or in addition to the irreparable injury described herein, as a direct and proximate result of the conduct described above, Salcomp has suffered and will continue to suffer damages in an amount to be proven at trial, and is entitled to recover these damages from Technocel..

53. Further, to the extent Technocel's actions were done knowingly, intentionally, willfully, wantonly, maliciously and/or recklessly, Salcomp is entitled to an award of exemplary or punitive damages.

## COUNT V

### (Negligent Misrepresentation)

54. Salcomp hereby realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 53 above.

55. On information and belief, Technocel intended for Salcomp to rely on the misrepresentations, omissions, and concealment.

56. Salcomp reasonably and justifiably relied to its detriment on the misrepresentations, omissions, and concealment of Technocel.

57. As a direct and proximate result of Technocel's misrepresentations, omissions, and concealment described herein, Salcomp has suffered, and will continue to suffer, irreparable harm and injury including, but not limited to, substantial losses in revenue, loss of profits, discredit to its business reputation and loss of goodwill, loss of business relations with existing and future business prospects and loss of competitive business advantage, opportunity and/or expectancy.

58. In the alternative, and/or in addition to the irreparable injury described herein, as a direct and proximate result of the conduct described above, Salcomp has suffered and will continue to suffer damages in an amount to be proven at trial, and is entitled to recover these damages from Technocel.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that judgment be entered against Defendant for the following:

1. On the First Claim for Relief, for the principle sum of not less than $4,147,528.00 for the Chargers shipped to and received by Technocel, plus interest thereon at the legal rate;

2. On the Second and Third Claims for Relief, for general, consequential and actual damages in an amount to be determined at trial of not less than $4,147,528.00;

3. On the Fourth Claim for Relief, for general, consequential, actual, and exemplary damages in an amount to be determined at trial, but in no event less than $4,147,528.00.

4. On the Fifth Claim for Relief, for general, consequential, and actual damages in an amount to be determined at trial, but in no event less than $4,147,528.00.

5. For costs of suit;

6. For interest as allowed by law; and

7. For such other and further relief as the court may deem just and proper.

Dated: October 25, 2017

Squire Patton Boggs (US) LLP

By:/s/ *Helen H. Yang*
        Helen H. Yang
        Marisol C. Mork
Attorneys for Plaintiff
SALCOMP PLC