**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SALCOMP PLC,

              Plaintiff,

    v.

FOREIGN TRADE CORPORATION,
d/b/a TECHNOCEL,

              Defendant.

_____

FOREIGN TRADE CORPORATION,
d/b/a TECHNOCEL,

              Counterclaimant,

    v.

SALCOMP PLC, et al.

              Counterclaim
              Defendants.

Case No. CV 17-7807 JFW (SSx)

**ORDER GRANTING SALCOMP PLC'S
APPLICATION FOR RIGHT TO ATTACH
ORDER AND FOR WRIT OF
ATTACHMENT  [Dkt. No. 21]**

**I.**

**INTRODUCTION**

On October 25, 2017, Plaintiff Salcomp PLC ("Salcomp")
("CLTF") filed a civil complaint against Defendant Foreign Trade

Corporation d/b/a Technocel ("Technocel").  (Complaint, Dkt. No. 1).  Technocel filed an Answer and Counterclaim on December 7, 2017. ("Counterclaim," Dkt. No. 15). On December 30, 2017, Salcomp filed an Application for Right to Attach Order and Order for Issuance of Writ of Attachment ("Application" or "Appl."), including the declaration of Toni Aapio ("Aapio Decl.").[1] (Dkt. No. 21).  Technocel filed an Opposition on January 9, 2018 ("Opposition" or "Opp.," Dkt. No. 23), including Evidentiary Objections to Aapio's Declaration. ("Objections" or "Obj.," Dkt. No. 24). On January 16, 2018, Salcomp filed a Reply in support of its Application ("Reply") and a Response to Technocel's Evidentiary Objections ("Resp.").  (Dkt. No. 30).

On January 30, 2018, Insolvency Services Group, Inc. ("ISG" or "Assignee"), a third party assignee of what it represented was "substantially all" of Technocel's assets, filed a Limited Opposition to Salcomp's Application ("ISG Opp."), including the declaration of Brian L. Davidoff ("Davidoff Decl.").  (Dkt. No. 34).  ISG stated that it was taking no position on the merits of Salcomp's claims or Technocel's counterclaims, but merely wished to inform the Court that effective January 9, 2018, Technocel had assigned its assets to ISG for the benefit of Technocel's creditors as permitted by California Code of Civil Procedure section 493.010 (the "January 9, 2018 General Assignment").  (ISG Opp. at 1-2).

---

[1] Aapio is a Technology Manager at Salcomp responsible for managing "purchase orders, invoices, correspondence, any associated payments and other documentary evidence related to certain outstanding accounts receivable on transactions" between Salcomp and Technocel, among other customers.  (Aapio Decl. ¶ 2).

ISG contends that because an assignment for the benefit of creditors "'prevails over a subsequent attachment or execution,'" Technocel no longer retains any assets that can be subject to attachment, rendering Salcomp's Application moot. (ISG Opp. at 3-4) (quoting <u>Brainard v. Fitzgerald</u>, 3 Cal. 2d 157, 163 (1935)). To the extent that the Court determines that the attachment should nonetheless issue, ISG requests that the attachment order "exclude assets subject to the Assignment so as to ensure clarity in the assignment process and prevent confusion." (<u>Id.</u> at 5).

The Court held a hearing on February 6, 2018. At the hearing, counsel for Salcomp acknowledged that the January 9, 2018 General Assignment from Technocel to ISG for the benefit of Technocel's creditors restricts the assets subject to attachment. For the reasons stated below and on the record at the hearing, Salcomp's Application is GRANTED. Technocel's Evidentiary Objections are OVERRULED. Notwithstanding anything in this Order to the contrary, Technocel's assets or property subject to attachment by Salcomp do not include any of the assets or property assigned in accordance with the January 9, 2018 General Assignment. (<u>See</u> Davidoff Decl., Exh. 1). The Clerk of Court shall issue a writ of attachment in the amount of $2,940.059.00 for all assets or property subject to attachment pursuant to California Civil Procedure Code section 487.010, excluding all assets or property assigned pursuant to the January 9, 2018 General Assignment, contingent upon Salcomp's posting of a bond in the amount of $10,000.00 pursuant to California Civil Procedure Code section 489.220(a).

## II.

### BACKGROUND FACTS AND ALLEGATIONS

Salcomp is a manufacturer of smartphone and tablet chargers. (Complaint ¶ 3). Technocel is an international distributor of wireless accessories. (Id. at ¶ 4). Salcomp states that in July and August of 2016, Technocel issued three purchase orders to Salcomp for the manufacture and sale of a total of 135,000 units of Verizon-branded chargers, in exchange for which Technocel agreed to pay Salcomp $4,166,050.00. (Id. ¶ 11; see also Aapio Decl. ¶¶ 3-5 & Exhs. A-C).

Salcomp alleges that between March and June 2017, it delivered 95,860 chargers to Technocel at an agreed upon price of $2,958,581.00. (Complaint ¶¶ 12, 16; Aapio Decl. ¶ 7 & Exh. D). Technocel took possession of the chargers without having cancelled any of the orders or refusing to accept any shipment. (Complaint ¶ 13; Aapio Decl. ¶ 8). Payment for the deliveries became due on a rolling basis between May and July 2017. (Complaint ¶ 12). In response to payment inquiries from Aapio, Technocel employee Cristina Valenzuela represented in an email dated May 9, 2017 that Technocel had sent payment on the first invoice in the amount of $18,522.00 and "should have another schedule" for the remaining amounts due. (Aapio Decl., Exh. E at 45).[2]

---

[2] Salcomp's exhibits are not consecutively paginated. See C.D. Cal. L.R. 11-3.3. Accordingly, when citing to individual pages of the exhibits, the Court will use the CM/ECF number at the top of the page as docketed.

On May 24, 2017, Technocel requested that Salcomp put the approximately 39,000 undelivered chargers on hold.  (Complaint ¶ 16).  Technocel did not make any further payments beyond the initial $18,522.00 partial payment in early May 2017, leaving $2,940,059.00 due and owing on the chargers for which Technocel had accepted delivery.  (Aapio Decl. ¶ 11).  The Complaint raises claims for breach of contract, promissory estoppel, unjust enrichment, fraudulent misrepresentation/inducement, and negligent misrepresentation.  (Complaint ¶¶ 23-58).

In its Counterclaim, Technocel alleges that in mid-2017, Salcomp improperly converted Verizon's business from Technocel to Salcomp by selling its chargers directly to Verizon at the same price that Technocel had sold the products, in violation of Technocel's confidentiality agreement with Salcomp.  (Counterclaim ¶¶ 10-15).  The Counterclaim raises causes of action against Salcomp for breach of the Confidential Disclosure Agreement, breach of the covenant of good faith and fair dealing, intentional interference with contractual relations, intentional interference with prospective economic relations, and unfair competition.[3]  (Id. ¶¶ 16-52).

---

[3] On January 26, 2018, the District Judge dismissed with leave to amend both of Technocel's intentional interference counterclaims and its unfair competition counterclaim.  (Dkt. No. 33).  In dismissing each of these three counterclaims, the District Judge stated:  "Although the Court has serious reservations that Technocel will be able to successfully amend its [counterclaims for interference with contractual relations and prospective economic advantage, and for unfair competition], in light of the Ninth Circuit's liberal policy favoring leave to amend, the Court will give Technocel one opportunity to amend its Counterclaim[s]."  (Id. at 4-6).

**III.**

**THE ATTACHMENT APPLICATION AND THE PARTIES' CONTENTIONS**

Salcomp seeks a Right To Attach Order and Writ of Attachment in the amount of $2,940,059.00, the outstanding amount owing on the chargers accepted by Technocel. (Appl. at 3). Salcomp maintains that it is entitled to the attachment because (1) the claim is based on a readily ascertainable amount owing and unpaid under the contract; (2) the claim has "probable validity" because it is more likely than not that Salcomp will obtain a judgment against Technocel; (3) the attachment is sought only as a security, and is thus for a proper purpose. (Id. at 5-7).

Technocel opposes the Application first on the ground that the Application fundamentally "is based upon fraud and negligent misrepresentation claims which are not subject to attachment." (Opp. at 5). Second, Technocel contends that the Application fails to include evidence sufficient to show the "probable validity" of Salcomp's claim, both because Aapio's declaration lacks foundation, among other purported defects, and because Salcomp's claim is subject to offset by Technocel's counterclaims. (Id. at 7-9). Technocel acknowledges that pursuant to California Code of Civil Procedure § 483.015, a counterclaim cannot offset an attachment amount unless the counterclaim is itself the proper subject of attachment. (Id. at 9). However, Technocel argues that its counterclaims, "whether the proper subject of a right to attachment or not, demonstrate that Salcomp cannot establish the probable validity of its claim." (Id.). Third, Technocel states that the

6

Application is brought for an improper purpose because it is part
of a pattern of Salcomp's "ongoing harassment of and wrongful
conduct towards" Technocel.  (Id.).  Finally, in the event that
the Court grants the Application, Technocel asks that Salcomp be
required to post a "substantial bond."  (Id. at 10).

Salcomp argues in its Reply that the inclusion of tort claims
in its Complaint does not nullify the breach of contract claim upon
which the Application is based.  (Reply at 2-4).  Additionally,
Salcomp states that Aapio is qualified to testify about Salcomp's
dealings with Technocel because he "clearly manages purchase
orders, invoices, correspondence and associated payments."[4]  (Id.

_____

[4] The Court agrees with Salcomp that Technocel's Evidentiary
Objections to Aapio's declaration are not persuasive.  For example,
Technocel contends that Aapio's description of his own work
responsibilities, which include managing "outstanding debts owed
to Salcomp by Technocel," is "irrelevant, argumentative,
speculative and lacks foundation."  (Obj. at 2).  Aapio clearly is
competent to describe what he does at work in general and what his
communications were with Technocel in particular, and his
responsibilities for managing the Technocel account make him well
suited to authenticate the documents attached to his declaration.
To the extent that Technocel is somehow trying to challenge the
very idea that it ever owed money to Salcomp, such a contention is
undermined by correspondence from Technocel's own employees to
Salcomp.  (See, e.g., Aapio Decl., Exh. F at 49) (email from
Technocel employee Farzin Behnejad to Aapio, stating, "Hi Toni, I
just escalated Salcomp overdue invoices to our head of accounting
Tom Forde.  He was not aware of this and promised to have a look
at it.").

Furthermore, Technocel does not dispute the authenticity of any of
the contracts, correspondence, or other documents proffered by
Aapio.  Burch v. Regents of University of California, 433 F. Supp.
2d 1110, 1120-21 (E.D. Cal. 2006) (even if a document is not
properly authenticated, it is improper to raise an objection on
that ground "'if the party nevertheless knows that the document is
authentic'") (quoting Fenje v. Feld, 301 F. Supp. 2d 781, 789 (N.D.
Ill. 2003)).  In sum, Technocel's objections are either frivolous

at 4) (emphasis in original; citing Aapio Decl. ¶ 2). Salcomp further notes that because none of Technocel's counterclaims involves a fixed or readily ascertainable amount in damages, the counterclaims are not appropriate for attachment and cannot offset the amount sought in the Application. (Reply at 5). Salcomp emphasizes that there is no _evidence_ to suggest that the Application was brought for any purpose other than to secure the amount owing to Salcomp under its contract with Technocel. (Id. at 5-6). Finally, Salcomp states that although it is "prepared to file an undertaking in connection with the amount it may recover in this matter pursuant to California Code of Civil Procedure § 489.210," it asks that the amount of the bond be only "what justice requires." (Id. at 7).

**IV.**

**DISCUSSION**

**A.   California Law Applies To Plaintiff's Application For Right To Attach Order And Writ Of Attachment**

A plaintiff in federal court may invoke whatever remedies are provided under the law of the state in which the federal court is located for "seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64; Reebok Int'l, Ltd.

or unsupported, or the evidence objected to was not necessary to the Court's decision. Accordingly, all of Technocel's Evidentiary Objections are OVERRULED. See Lake v. First Nat. Ins. Co. of America, 2010 WL 4807059, at *7 n.4 (N.D. Cal. Nov. 18, 2010) (overruling evidentiary objections as moot where it was not necessary for the court to consider the challenged exhibits).

1   v. Marnatech Enters., Inc., 970 F.2d 552, 558 (9th Cir. 1992)

2   (discussing Rule 64); NML Capital, Ltd. v. Spaceport Sys. Int'l,

3   L.P., 788 F. Supp. 2d 1111, 1116 (C.D. Cal. 2011).  These remedies

4   may include a writ of attachment.  Fed. R. Civ. P. 64; see also

5   VFS Fin., Inc. v. CHF Express, LLC, 620 F. Supp. 2d 1092, 1094-95

6   (C.D. Cal. 2009) (Rule 64 "provides for prejudgment attachment[]

7   and other prejudgment remedies . . ." authorized under state law).

8   Because attachment is sought against Technocel in the state of

9   California, California law determines whether and under what

10  conditions a writ of attachment may issue.  In California, the

11  procedures and grounds for obtaining orders for prejudgment writs

12  of attachment are codified at California Code of Civil Procedure

13  §§ 481.010-493.060.

14

15  **B.    Overview Of California Law Governing Attachment**

16

17      Attachment "is a remedy by which a Plaintiff with a

18  contractual claim to money (not a claim to a specific item of

19  property) may have various items of a defendant's property seized

20  before judgment and held by a levying officer for execution after

21  judgment." Waffer Int'l Corp. v. Khorsandi, 69 Cal. App. 4th 1261,

22  1271 (1999) (emphasis omitted).  California allows prejudgment

23  attachments under limited circumstances as "a provisional remedy

24  to aid in the collection of a money demand." Kemp Bros. Constr.

25  Inc. v. Titan Elec. Corp., 146 Cal. App. 4th 1474, 1476 (2007).

26  It is "a harsh remedy because it causes the defendant to lose

27  control of his property before the plaintiff's claim is

28  adjudicated." Martin v. Aboyan, 148 Cal. App. 3d 826, 831 (1983).

Therefore, the requirements for the issuance of a writ of attachment are strictly construed against the applicant. Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co., 112 F. Supp. 2d 1178, 1181 (C.D. Cal. 2000) ("Attachment is a purely statutory remedy, which is subject to strict construction."). The burden is on the applicant to establish each element necessary for an attachment order by a preponderance of the evidence. Loeb & Loeb v. Beverly Glen Music, Inc., 166 Cal. App. 3d 1110, 1116 (1985).

A writ of attachment may be issued "only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars." Cal. Civ. Proc. Code § 483.010(a) (emphasis added). For damages to be "readily ascertainable," the contract "must furnish a standard by which the amount due may be clearly ascertained and there must exist a basis upon which the damages can be determined by proof." CIT Group/Equipment Financing, Inc. v. Super DVD, Inc., 115 Cal. App. 4th 537, 540 (2004) (internal quotation marks omitted); see also Pet Food Express, Ltd. v. Royal Canin USA Inc., 2009 WL 2252108, at *5 (N.D. Cal. July 28, 2009) ("lost profits" that plaintiff sought to attach were not "certain, fixed, or even readily ascertainable" and thereby failed to "meet the threshold requirement for this court to even consider issuing a writ of attachment"). Attachment is permitted on unsecured claims or claims secured by personal property, but not on claims secured by real property. Cal. Civ. Proc. Code § 483.010(b). Attachment lies on any claim against a partnership or corporation

and on claims against an individual arising out of the individual's conduct in a trade, business, or profession.  Id. § 483.010(c).

A court must find all of the following before an attachment order may issue: (1) the claim upon which the attachment is based is one upon which an attachment may be issued; (2) the plaintiff has established the probable validity of the claim upon which the attachment is based; (3) the attachment is not sought for a purpose other than recovery of the claim upon which the attachment is based; and (4) the amount to be secured by the attachment is greater than zero.  Id. § 484.090(a).

**C.   Salcomp Is Entitled To A Writ Of Attachment**

Salcomp satisfies all of the criteria for the issuance of an attachment order.  Accordingly, the Application is GRANTED.

    **1.   The Claim Upon Which The Attachment Is Based Is One Upon Which An Attachment May Issue And The Amount To Be Attached Is Greater Than Zero**

The attachment requested here is one upon which an attachment may issue under section 483.010(a).  The claim is for money, based upon written contracts, in a fixed or readily ascertainable amount. See Cal. Civ. Proc. Code § 483.010(a).  The contracts state the amount owing per unit, and Salcomp has submitted competent evidence of: the number of units delivered to Technocel, the partial payment received, and the outstanding amount due on those units based on

11

the terms of the contract.  (See Aapio Decl. ¶¶ 3-9 & Exhs. A-D).
Technocel argues that despite Salcomp's breach of contract and
promissory estoppel causes of action, Salcomp's claims are
fundamentally for fraud and negligent misrepresentation, which are
not subject to attachment.  (Opp. at 5).  The Court disagrees.

The Complaint unambiguously asserts contract claims, and the
Application is based entirely on Salcomp's breach of contract cause
of action.  The inclusion of tort claims in the Complaint does not
override Salcomp's breach of contract claim, or transform it into
a tort.  As one California court explained:

> The Legislature has determined attachments may properly
> issue only to secure anticipated recoveries on contract
> claims in fixed or readily ascertainable amounts.
> (§ 483.010, subds. (a) and (b).)  By necessary
> implication, attachments generally are unavailable on
> tort claims due to their unascertainable value.  It does
> not automatically follow, however, that where contract
> and tort causes of action are joined the creditor loses
> his right to attach.  Attachment should always be
> available to secure liquidated contract claims seeking
> damages completely separate from those sought under a
> tort claim even when the [contract and tort] claims are
> based on some common facts.

Baker v. Superior Court, 150 Cal. App. 3d 140, 146-47 (1983); see
also Waffer Int'l, 69 Cal. App. 4th at 1277 (quoting same).

Salcomp's Application is based on a claim for which attachment is proper, and the amount to be secured is greater than zero.  The first and fourth criteria for the issuance of an attachment are therefore satisfied.  Cal. Civ. Proc. Code § 484.090(a)(1) & (4).

**2.   Probable Validity Of The Claim Favors Salcomp**

To establish the "probable validity" component, a plaintiff must show it is more likely than not that it will obtain a judgment against the defendant.  Cal. Civ. Proc. Code § 481.190; see also Pos-A-Traction, 112 F. Supp. 2d at 1182; see also Blastrac, N.A. v. Concrete Solutions & Supply, 678 F. Supp. 2d 1001, 1005 (C.D. Cal. 2010).  "In determining the probable validity of a claim where the defendant makes an appearance, the court must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation." Loeb & Loeb, 166 Cal. App. 3d at 1120.  Thus, it is not enough for the plaintiff to make out a prima facie case for breach of contract; rather, the plaintiff must also show that the defenses raised are "less than fifty percent likely to succeed." Pet Food Express, 2009 WL 2252108, at *5.  If an applicant fails to rebut a factually-supported defense that would defeat its claims, the applicant has not established probable validity.  See Intervest Mortgage Inv. Co. v. Skidmore, 2008 WL 5385880, at *7 (E.D. Cal. Dec. 19, 2008) ("[Plaintiff] argues that it may not be required to refute [defendant's] defenses, i.e. that probable validity on the prima facie case may be sufficient. The court disagrees. Section 484.090 requires prediction of the probable outcome of the litigation, and

1   the affirmative defenses and counterclaims will potentially
2   influence this outcome."); Plata v. Darbun Enters., Inc., 2009 WL
3   3153747, at *7 (S.D. Cal. Sept. 23, 2009) (denying right to attach
4   order because an asserted defense prevented the plaintiffs from
5   establishing the probable validity of their claim).

6

7       Salcomp contends that its claims have "probable validity"
8   because "by placing the Purchase Orders and accepting the
9   conforming Chargers without objections, Technocel agreed to the
10  payment terms reflected in the Invoices and Purchase Orders
11  . . . ." (Appl. at 6). Technocel raises two arguments as to why
12  Salcomp is unable to satisfy this requirement. First, Technocel
13  contends that the evidence proffered by Salcomp is insufficient to
14  establish probable validity because Aapio's declaration is
15  incompetent. (Opp. at 6-8). Second, Technocel maintains that
16  Salcomp's claim lacks probable validity because it is subject to
17  offset by Technocel's counterclaims. Neither of Technocel's
18  arguments has merit.

19

20      The evidence supports the probable validity of Salcomp's
21  breach of contract claim because it shows that the contract terms
22  are straightforward, Technocel accepted delivery of the chargers
23  pursuant to those contract terms, and apart from a small initial
24  partial payment, Technocel has not paid the amount owing. Aapio's
25  declaration is competent, and the documents attached to his
26  declaration, the authenticity of which Technocel does not dispute,
27  largely speak for themselves. In contrast, Technocel's offset
28  argument is unavailing. California Code of Civil Procedure section

481.015 provides that an amount subject to attachment "shall be reduced by . . . [t]he amount of any indebtedness of the plaintiff that the defendant has claimed in a cross-complaint filed in the action if the defendant's claim is one upon which an attachment could be issued." Cal. Civ. Proc. Code § 481.015(b)(2). However, none of Technocel's counterclaims is for a fixed or readily ascertainable amount. Accordingly, those counterclaims cannot be used to "offset" Salcomp's attachment claim.

Furthermore, even if the counterclaims were appropriate for attachment, which they are not, Technocel has not provided any evidence for the Court to assess their potential validity. See Pos-A-Traction, 112 F. Supp. 2d at 1183 ("[T]o sustain reduction in a writ amount, most courts require that the defendant . . . provide enough evidence about its counterclaims . . . and/or defenses to prove a prima facie case."). Technocel refers generally to the existence of its counterclaims and defenses without discussing any in depth, and offers only conclusory argument, but no evidence, to support their prima facie validity or likelihood of success. Accordingly, Technocel fails to meaningfully challenge the probable validity of Salcomp's breach of contract claim, particularly in comparison to the compelling evidence offered by Salcomp in support of its claim.

Salcomp has established the probable validity of its breach of contract claim. The second criterion for the issuance of an attachment is therefore satisfied. Cal. Civ. Proc. Code § 484.090(a)(2).

**3.    Attachment Is Not Sought For A Purpose Other Than Recovery Of The Claim**

Salcomp contends that its only purpose in seeking a writ of attachment is to secure a judgment in the pending action.  (Appl. at 7).  Technocel argues that Salcomp is using the attachment to obtain a collateral advantage and extort a favorable result.  (Opp. at 9).  According to Technocel, "Salcomp filed its Application in order to wield its wrongfully achieved position of power over Technocel in order to cause Technocel to make concessions to Salcomp, including to pressure Technocel into an unfair and inequitable settlement of Technocel's affirmative claims" arising from "Salcomp's tortious misappropriation of Technocel's relationship with Verizon Wireless . . . ."  (Id. at 10).

There is no evidence before the Court that Salcom is seeking attachment for any purpose other than securing recovery on the contracts in the event it prevails at trial.  The evidence shows that Salcomp manufactured and delivered chargers to Technocel pursuant to written contracts, and when payment was not forthcoming, made numerous attempts to obtain payment prior to filing suit.  (See Aapio Decl., Exhs. E, F & G).  Technocel's continued refusal to pay outstanding invoices or, apparently, to engage in meaningful negotiations while Salcomp was attempting an informal resolution, supports the inference that Salcomp is simply attempting to secure the monies it believes Technocel owes.  Seeking to protect monies purportedly owed on a contract is not "harassment."  Nor is it a ground for finding an improper purpose

16

under California's attachment statutes.  See <u>Aliya Medcare Fin.</u>, <u>LLC v. Nickell</u>, 2015 WL 11089594, at *15 (C.D. Cal. May 28, 2015) ("The court cannot find that the writs of attachment were sought for an improper purpose, given that [plaintiff] was attempting to secure funds it contends belong to it under its various agreements with defendants.").

The evidence does not show that Salcomp is seeking attachment for an improper purpose.  The third and final criterion for the issuance of an attachment is therefore satisfied.  Cal. Civ. Proc. Code § 484.090(a)(3).

**4.  A Bond In The Statutory Amount Is Warranted**

Technocel asks that Salcomp be required to post a "substantial bond" if the Court grants the Application.  (Opp. at 10).  The posting of a bond is non-discretionary.  See Cal. Civ. Proc. Code § 489.210 ("Before issuance of a writ of attachment . . . the plaintiff <u>shall file</u> an undertaking to pay the defendant any amount the defendant may recover for any wrongful attachment by the plaintiff in the action.") (emphasis added); <u>Vershbow v. Reiner</u>, 231 Cal. App. 3d 879, 883 (1991) ("Absent the prerequisite undertaking, the writ of attachment issued by the clerk of the court was void <u>ab initio</u> . . . .").  Section 489.220 sets the default amount of an attachment bond at $10,000.00.  Cal. Civ. Proc. Code § 489.220(a).  However, the statute further provides that:

1      If, upon objection to the undertaking, the court

2   determines that the probable recovery for wrongful

3   attachment exceeds the amount of the undertaking, it

4   shall order the amount of the undertaking increased to

5   the amount it determines to be the probable recovery for

6   wrongful attachment if it is ultimately determined that

7   the attachment was wrongful.

8

9   Id. § 489.220(b); see also Platte River Ins. Co. v. Premier Power

10  Renewable Energy, Inc., 2015 WL 5474344, at *3 (E.D. Cal. Sept.

11  17, 2015), report and recommendation adopted, 2015 WL 6460414 (E.D.

12  Cal. Oct. 26, 2015) ("The presumptive amount of the undertaking

13  under the statute is $10,000.00, but that amount may be increased

14  on a showing that the probable recovery for a wrongful attachment

15  would be greater.").

16

17     In determining whether to increase the amount of an attachment

18  bond beyond the statutory default, the court has discretion to give

19  great weight to the degree of probability that the plaintiff will

20  prevail.  Arabian Gas and Oil Dev. Co. v. Wisdom Marines Lines,

21  S.A., 2017 WL 1175592, at *4 (N.D. Cal. March 30, 2017).  "It is

22  the optimal function of the remedy of attachment to provide the

23  plaintiff with security up to the amount of his claim at a cost

24  that does not render the remedy prohibitive while still affording

25  to the defendant an undertaking in an amount that will adequately

26  satisfy his damages for wrongful attachment."  N. Hollywood Marble

27  Co. v. Superior Court, 157 Cal. App. 3d 683, 690 (1984).  Requiring

28  a plaintiff with "a claim of certain merit" to post a "massive

undertaking" could risk the viability of the plaintiff's entire business and as such, "the remedy [of attachment] would prove too costly to obtain or too costly to be of advantage."   Id. Accordingly, as one leading treatise explains,

> The term "probable recovery for wrongful attachment" in C.C.P. 489.220(b) does not mean "probable loss" in the sense of "the total damages defendant will probably sustain presuming that the attachment issued on a meritless action." Rather, the court has discretion "to consider the probability that the plaintiff will prevail in the action and to adjust the amount of the total expected damages to defendant according to that probability factor." In addition, the threat of excessive attachment does not justify an increase in the undertaking; the defendant is adequately protected by the motion procedure for releasing excessive attachment provided by C.C.P. 488.720 . . . .[5]

6 Witkin, Cal. Proc. 5th Prov. Rem. § 116 (2008). Accordingly, where the likelihood that the plaintiff will prevail is great, even if the amount of the attachment is substantial, the need for an increased bond is diminished. N. Hollywood Marble, 157 Cal. App. 3d at 691-92.

---

[5] California Civil Procedure Code section 488.720 authorizes a defendant subject to an attachment to apply by noticed motion "for an order releasing the attachment of property to the extent that the value of the defendant's interest in the property clearly exceeds the amount necessary to satisfy the amount to be secured by the attachment." Cal. Civ. Proc. Code § 488.720(a).

The Court declines to increase the amount of the bond Salcomp shall be required to post beyond the statutorily-mandated amount in section 489.220(a).  The probability that Salcomp will prevail on its contract claim is strong.  Technocel does not submit any evidence to support its affirmative defenses (or counterclaims) or explain why any specific defenses are likely to defeat Salcomp's contract claims.[6]  Additionally, Technocel has made absolutely no

---

[6] Indeed, several of Technocel's so-called "affirmative defenses" are not affirmative defenses at all.  (See Counterclaim at 7-10). An affirmative defense "plead[s] matters extraneous to the plaintiff's prima facie case, which deny plaintiff's right to recover, even if the allegations are true." Federal Deposit Ins. Corp. v. Main Hurdman, 655 F. Supp. 259, 262 (E.D. Cal. 1987). However, "[a] defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense." Zivkovic v. Southern California Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002); see also In re Rawson Food Service, Inc., 846 F.2d 1343, 1349 (11th Cir. 1988) (defenses which merely "negate an element of the plaintiff's prima facie case . . . are excluded from the definition of affirmative defense in Fed. R. Civ. P. 8(c)") (internal quotation marks omitted); Vogel v. Huntington Oaks Delaware Partners, LLC, 291 F.R.D. 438, 442 (C.D. Cal. 2013) ("An attack on a plaintiff's case-in-chief is not an affirmative defense.").

Accordingly, defenses challenging the adequacy of the evidence or the pleading are not proper affirmative defenses.  See, e.g., Kaiser v. CSL Plasma Inc., 240 F. Supp. 3d 1129, 1134 (W.D. Wash. 2017) ("[F]ailure to state a claim is not a proper affirmative defense but, rather, asserts a defect in [plaintiffs'] prima facie case . . . [and] is more properly brought as a motion.") (internal quotation marks and citation omitted; brackets in original); S.E.C. v. Sands, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995) ("The allegation that the complaint does not state fraud with particularity is not an affirmative defense . . . ."); Vogel, 291 F.R.D. at 442 (reservation of right to assert unspecified defenses later "is not a defense at all, affirmative or otherwise").

Other affirmative defenses raised by Technocel are difficult to understand in the absence of further factual development and seem of dubious merit at this stage of the proceedings.  For example, Technocel claims that Salcomp's claim is barred because it relies on evidence prohibited by the parol evidence rule, and that Salcomp

showing of what its anticipated damages might be if the attachment were found to be wrongful.  As such, the Court has no meaningful basis for concluding that the amount set in section 489.220(a) would be insufficient to cover the amount that Technocel could expect to recover for a wrongful attachment.  Accordingly, the Court ORDERS Salcomp to post a bond in the amount of $10,000.00 as a condition for obtaining a writ of attachment.

**V.**

**CONCLUSION**

Salcomp has satisfied the criteria for the issuance of a writ of attachment.  Accordingly, the instant Application for a Right to Attach Order and Writ of Attachment is GRANTED.  Notwithstanding anything in this Order to the contrary, Technocel's assets or property subject to attachment by Salcomp do not include any of the assets or property assigned in accordance with the January 9, 2018 General Assignment.  (See Davidoff Decl., Exh. 1).  The Clerk of Court shall issue a writ of attachment in the amount of $2,940.059.00 for all assets or property subject to attachment pursuant to California Civil Procedure Code section 487.010, excluding all assets or property assigned pursuant to the January 9, 2018 General Assignment, contingent upon Salcomp's posting of a

"unreasonably delayed" in filing suit.  (Counterclaim at 9). However, Salcomp contends that Technocel violated the plain terms of written contracts and appears to have brought suit rather promptly, i.e., approximately three months after certain invoices became due and Salcomp's efforts to collect on the alleged debt failed.  Accordingly, Technocel's affirmative defenses do not meaningfully undermine the strength of Salcomp's claims for purposes of the present analysis.

21

1   bond in the amount of $10,000.00 pursuant to California Civil

2   Procedure Code section 489.220(a).

3

4   DATED:  February 13, 2018

5                                                    _____/S/_____

            SUZANNE H. SEGAL

6           UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28